IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE SUSAN R. MILES, | § | |
| | § | CASE NO. |
| Debtor. | § | 03-35637-HDH-13 |
| | § | |
| | § | |
| MAXIM HEALTHCARE SERVICES, INC., | § | |
| | § | |
| | § | |
| Appellant, | § | CIVIL ACTION NO. |
| | § | 3:05-CV-0828-P |
| v. | § | |
| | § | |
| SUSAN R. MILES et al., | § | |
| | § | |
| Appellees. | § | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Appellant Maxim Healthcare Services, Inc.'s ("Maxim" or "Appellant") appeal of the Bankruptcy Court's decision to refuse to consider Maxim's judicial estoppel argument, and Appellee Susan R. Miles' ("Miles" or "Appellee") Motion to Dismiss Maxim's appeal. After careful consideration of the Parties' briefing, the record, and applicable law, the Court hereby GRANTS Miles' Motion to Dismiss and DISMISSES Maxim's Appeal.

**FACTUAL BACKGROUND**

In 1994, Miles' 14-year-old son Willie "Boo" Searcy was involved in collision that rendered him a ventilator-dependent quadriplegic who required twenty-four hour attention and care. From April 1994 until March 2000, Miles personally provided her son with the in-home care he required. In March 2000, Miles hired Maxim to assist her in caring for her son for a few hours during the day.

On July 3, 2001, after the Maxim nurse departed Miles' home, Miles discovered that her

1

son's ventilator had been turned off, which resulted in his untimely death.

On June 2, 2003, Miles filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

On June 13, 2003, Miles filed her schedules, statement of financial affairs, and an original Chapter 13 Plan. These documents did not include a description of any claim Miles may have had against Maxim for her son's death.

On June 20, 2003, the Estate of Willie Searcy and Miles filed a wrongful death case against Maxim and the nurse who last attended Searcy in the Dallas County Probate Court ("the Lawsuit"). Miles did not amend her bankruptcy documents to reflect the Lawsuit as an asset of the estate.

On April 8, 2004, the Bankruptcy Court confirmed Miles' Chapter 13 Plan with a 0% payout to unsecured creditors.

After extensive discovery and trial preparation, the Parties to the lawsuit began a jury trial in the Dallas County Probate Court. Toward the end of the plaintiff's case, Maxim and Miles reached a $2 million settlement agreement. The parties announced their settlement agreement to the Probate Court. They negotiated the precise terms of the settlement structure between August 19, 2004 and September 17, 2004.

During this negotiation period, Maxim learned that Miles was a debtor in an ongoing bankruptcy proceeding and that the Lawsuit was not listed in her bankruptcy documentation. However, the parties continued to negotiate and proceed with the settlement. The parties agreed that Maxim would purchase an annuity for Miles in the amount of $900,000 and that Maxim would make a cash payment to Miles in the amount of $1.1 million. On September 20, 2004, Maxim purchased the annuity portion of the settlement. It has not yet transferred the cash amount to Miles.

2

On September 22, Miles amended her schedules to list the Lawsuit. On September 27, 2004, Miles signed the settlement agreement.

On October 7, 2004, Miles filed a motion to approve the settlement in the Bankruptcy Court. Maxim objected to Miles' motion to approve the settlement based on the defense of judicial estoppel. Specifically, Maxim argued that because Miles failed to disclose this potential claim to its creditors in her original bankruptcy schedules, she should be estopped from receiving the settlement proceeds. The Bankruptcy Court scheduled a hearing on the motion to approve settlement for February 10, 2005.

Prior to the hearing, Maxim moved for a continuance of the hearing so that it could conduct additional discovery on the judicial estoppel issue. On February 9, the Bankruptcy Court denied Maxim's motion for a continuance and expressly stated that it would not hear or consider Maxim's judicial estoppel theory at the February 10, 2005 hearing. The Court explained that the purpose of the hearing is to determine whether the settlement is fair and equitable and in the best interest of the estate. That determination is governed by factors outlined by the Fifth Circuit in *In re Foster Mortgage*, 68 F.3d 914 (5th Cir. 1996), and not the principles of judicial estoppel.

At the hearing on February 10, Maxim acknowledged the Bankruptcy Court's refusal to consider its judicial estoppel argument and stated that, subject to its objection to the settlement on that basis, it believed the settlement agreement satisfied the *In re Foster Mortgage* factors and should be approved on that basis. After considering the Parties' testimony, the Court granted Miles' motion, approved the settlement, and entered an order regarding same on February 14, 2005.

On February 24, 2005, Maxim filed its Notice of Appeal from the February 14, 2005 Order approving the settlement.

3

**DISCUSSION**

In its appeal, Maxim objects to the Bankruptcy Court's refusal to consider its judicial estoppel defense. In her Motion to Dismiss the appeal, Miles argues that Maxim failed to timely file a notice of appeal of the Court's February 9, 2005 order ruling on the judicial estoppel issue and now improperly seeks to use the February 14, 2005 order approving settlement as its basis for appeal.

Under bankruptcy law, a party has ten days from entry of an order to file its notice of appeal. *See* Fed. R. Bankr. P. 8002(a). As discussed earlier, the Bankruptcy Court issued two separate orders in this case - five days apart. In the first order dated February 9, 2005, the Bankruptcy Court held that it would not consider Maxim's judicial estoppel argument when deciding Miles' motion to approve the settlement agreement. The deadline for filing an appeal of that order was February 22, 2005 (because the 19th - 20th was a weekend and the 21st was a federal holiday). Maxim's notice of appeal was filed on February 24, 2005.

The second order was entered on February 14. In that order, the Bankruptcy Court approved the settlement by finding that the settlement was fair, reasonable, and in the best interest of the parties. The deadline for filing an appeal of that order was February 24.

Miles contends that the only order that deals with the subject matter of the appeal is the order denying continuance, dated February 9, 2004. Appellee argues that Maxim's appeal should be dismissed because (1) Maxim failed to timely file its appeal of the February 9 order and/or (2) Maxim seeks to appeal the wrong order by appealing the order approving settlement, dated February 14.

Appellant responds by arguing that it was entitled to appeal the February 14, 2005 final order approving settlement because a bankruptcy court's final order or disposition merges with all prior

4

interlocutory orders, giving the right to appeal all orders at the same time. In other words, a notice of appeal that names the final order or judgment is sufficient to support review of all earlier interlocutory orders that merge into the final order of judgment. *See In re K.D. Co., Inc.*, 254 B.R. 480, 486 (10th Cir. 2000); *In re Rambo*, 209 B.R. 527, 529 (10th Cir. 1997); *In re Urban Broadcasting Corp.*, 304 B.R. 263 (E.D. Va. 2004); *In re Marino*, 213 B.R. 846, 850 (9th Cir. 1997); *In re Robinson*, 194 B.R. 697, 701 (N.D. Ga. 1996). Maxim argues that the Bankruptcy Court's order denying the motion for continuance and the motion to compel discovery, which included a decision refusing to consider Maxim's defense of judicial estoppel was an interlocutory order that merged into the final order approving settlement. Thus, the Bankruptcy Court's decision regarding judicial estoppel was appealable as of the date the order approving settlement was entered.

Appellee does not dispute the law upon which Appellant relies. Rather, she disputes Appellant's characterization of the February 9 order as an interlocutory order, rather than a final order. Miles argues that because the February 9 order refusing to consider Maxim's defense resolved all disputed issues between the parties, the order was final and subject to the ten-day appeal rule.

Thus, the Court must first determine whether the order denying continuance, which contained a ruling on the judicial estoppel issue, was a final order that was immediately appealable.

The federal district court has jurisdiction to hear bankruptcy appeals pursuant to 28 U.S.C. § 158. This section confers appellate jurisdiction to review "final judgments, orders, and decrees" from a bankruptcy court. 28 U.S.C. § 158(a)(1). Because final orders may be appealed as of right to the district court, it is crucial to be able to determine what orders are final and what are interlocutory. *See* 1 Collier on Bankruptcy ¶ 5.07[1][a] (15th ed. 2005). The latter can be appealed

only with consent of the district court.  *See* 28 U.S.C. § 158(a)(3).

The concept of finality is broader and more flexible in bankruptcy proceedings than in civil cases and determinations of finality in the bankruptcy context are dealt with in a more pragmatic and less technical sense than in other settings.  *See England v. Federal Deposit Ins. Corp.,* 975 F.2d 1168, 1171-72 (5th Cir. 1992); *Moody v. Seaside Lanes*, 825 F.2d 81, 85 (5th Cir. 1987); Collier ¶ 5.07[1][b].  The determination of whether an order is final or interlocutory is often a difficult one to make.  *See* Collier ¶ 5.07[1][b].

Because a bankruptcy case is simply an aggregation of individual controversies, the resolution of which must be reached before bankruptcy distribution, it is impractical to find that the only final order is the order closing the bankruptcy case.  *See England*, 975 F.2d at 1171; Collier ¶ 5.07[1][b].  This reasoning sets the framework for resolving the issue of finality in bankruptcy.

A bankruptcy order is considered final if it finally disposes of discrete disputes within the larger case or conclusively determines a separable issue over a creditor's claim or priority.  *See In re Greene Co. Hosp.,* 835 F.2d 589, 594 (5th Cir. 1988); *England*, 975 F.2d at 1171-72.  Likewise, if there is a final determination of the rights of the parties to secure the relief they seek in their suit, then the order is final.  *See Moody*, 825 F.2d at 84.  The Fifth Circuit has held that "[a] final judgment is one that disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree.'" *Moody*, 825 F.2d at 86 n. 5.  When the bankruptcy court is left with no dispute or issue to resolve after entering the order, then the order is considered a final order" *See In re Eagle Bus. Mfg., Inc.*, 62 F.3d 730, 734 (5th Cir. 1995).

6

Typically, a bankruptcy court ruling on a motion for continuance or a request for discovery is regarded as an interlocutory order that can be merged with the final order for appeal purposes. Yet, this case presents us with an unusual situation. In this case, the Order on Motion for Continuance (which resolved a motion for a continuance and a motion to compel) contains a final decision concerning an unrelated, discrete, and substantive issue - namely, whether Maxim was entitled to present an affirmative defense. The Bankruptcy Court held, "the discovery requested relates to issues that are largely irrelevant to the hearing on the Debtor's Motion for Approval [of Settlement]. Apparently, Maxim seeks further discovery to develop a judicial estoppel theory to advance in opposition to the settlement it reached and announced in state court. At the hearing on the Debtor's Motion for Approval, this Court's approval of the settlement will . . . [not be based] on the principals of judicial estoppel." (R. at 151.)

This ruling effectively and conclusively resolved any and all disputes between the parties. By refusing to consider Maxim's affirmative defense, the Bankruptcy Court was left with no disputed issue to resolve after entering the order. Therefore, the Court concludes that the February 9, 2005 Order refusing to consider Maxim's affirmative defense was final and appealable.[1]

For these reasons, the Court concludes that if Maxim wanted to appeal the Bankruptcy Court's decision refusing to consider its judicial estoppel argument, Maxim was required to appeal the February 9, 2005 Order on Motion for Continuance, which was a final order with respect to that discrete issue, within ten days from the date of entry of the order. Because Maxim's appeal was

---

[1] Although we have held that the decision refusing to consider an affirmative defense is final for purposes of *allowing* immediate appeal, we must also determine whether Appellant *must* immediately appeal from this ruling or forfeit the right to appeal. The Parties have not briefed this issue, and the case law is sparse. After reviewing the limited cases on this issue, the Court agrees with the Ninth Circuit's ruling in *Preblich v. Battley*, 181 F.3d 1048, 1055-56 (9th Cir. 1999), in which the court held that a final bankruptcy order must be taken within the ten-day period prescribed by Bankruptcy Rule 8002.

filed outside the 10-day time period, the Court is without jurisdiction to hear the appeal and, therefore, Miles' Motion to Dismiss the appeal is hereby GRANTED and Maxim's appeal is hereby DISMISSED.

It is SO ORDERED, this 17th day of August 2005.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE